UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEDRO RODRIGUEZ-HENRIQUEZ,

                Petitioner,

   v.

NATHALIE ASHER, et al.,

                Respondents.

Case No. C14-1719-RSM-BAT

**REPORT AND RECOMMENDATON**

## INTRODUCTION

Pedro Rodriguez-Henriquez, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest Detention Center in Tacoma, Washington, filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 and an emergency request for stay of removal. Dkt. 1. The Court temporarily stayed his removal pending briefing on the merits of his petition. Dkt. 2. Respondents have moved to dismiss the petition and vacate the temporary stay. Dkt. 7. Mr. Rodriguez-Henriquez, who is represented by counsel, did not file a response. For the reasons discussed below, Mr. Rodriguez-Henriquez is not entitled to habeas relief or a stay of removal. Accordingly, the Court recommends **GRANTING** respondents' motion to dismiss, **DENYING** Rodriguez-Henriquez's habeas petition, and **VACATING** the temporary stay of removal.

REPORT AND RECOMMENDATON- 1

## BACKGROUND

Mr. Rodriguez-Henriquez is a citizen of El Salvador who first entered the United States in March 1999, without inspection. Dkt. 7-1 at ¶ 4. In 2001, he applied for and was granted temporary protected status ("TPS") and employment authorization. *Id.* at ¶ 5. His TPS and employment authorization were renewed until 2012. *Id.* at ¶¶ 6-12, 14-15. In May 2012, however, Mr. Rodriguez-Henriquez was convicted for a second time with driving under the influence, and ICE subsequently notified U.S. Citizenship and Immigration Services ("USCIS") that his two misdemeanor convictions made him ineligible for TPS. *Id.* at ¶¶ 13, 16-17. The following month, USCIS notified Mr. Rodriguez-Henriquez of its intent to withdraw TPS due to his convictions. *Id.* at ¶ 18.

On November 20, 2012, ICE agents arrested Mr. Rodriguez-Henriquez at his residence and issued a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id.* at ¶ 19. On January 10, 2013, an Immigration Judge ("IJ") granted Mr. Rodriguez-Henriquez voluntary departure, and he timely departed for El Salvador on April 8, 2013. *Id.* at ¶ 21.

On October 18, 2013, Mr. Rodriguez-Henriquez was apprehended by U.S. Border Patrol as he attempted to illegally reenter the United States in the Rio Grande Valley, Texas. *Id.* at ¶ 22. He was served with a Notice and Order of Expedited Removal and was removed to El Salvador on December 13, 2013. *Id.* On January 9, 2014, USCIS withdrew his grant of TPS. *Id.* at ¶ 20.

On February 6, 2014, Mr. Rodriguez-Henriquez was apprehended for a second time

REPORT AND RECOMMENDATON- 2

while attempting to illegally reenter the United States in the Rio Grande Valley. *Id.* at ¶ 23. He was served with a Notice of Intent/Decision to Reinstate Prior Order and was removed on March 12, 2014. *Id.*

On May 30, 2014, Mr. Rodriguez-Henriquez attempted to return to the United States a third time via the Rio Grande Valley and was apprehended by U.S. Border Patrol. *Id.* at ¶ 24. He was served with a Notice of Intent/Decision to Reinstate Prior Order the same day. *Id.* On July 24, 2014, he claimed—for the first time—a fear of returning to El Salvador. *Id.* at ¶ 27. He was interviewed by an asylum officer, who found that his claim did not rise to the level of reasonable fear. *Id.* at ¶ 28. On October 29, 2014, an IJ upheld the negative fear determination and returned Mr. Rodriguez-Henriquez's case to ICE for removal. *Id.* at ¶ 29. On November 3, 2014, the El Salvadorian Consulate issued a travel document, and Mr. Rodriguez-Henriquez was scheduled for removal on November 7, 2014. *Id.* at ¶¶ 30-31. His removal was halted after the Court issued a temporary stay in this case. *Id.* at ¶ 31.

On December 11, 2014, an IJ held an individualized bond hearing and granted Mr. Rodriguez-Henriquez release on a $20,000 bond. Dkt. 9-1. To date, he has not posted bond and remains in detention. Dkt. 9-2.

**DISCUSSION**

Mr. Rodriguez-Henriquez asks the Court to (1) grant reconsideration of his removal order and declare that he is eligible to have his immigration case reopened, (2) order his immediate release from immigration detention, (3) grant him a bond hearing, and (4) stay his removal. *See* Dkt. 1. As discussed below, he is not entitled to any of the requested relief and therefore his habeas petition should be denied.[1]

---

[1] In light of this conclusion, the Court does not address respondents' argument that Mr. Rodriguez-Henriquez failed

REPORT AND RECOMMENDATON- 3

**A.     The Court does not have jurisdiction over Mr. Rodriguez-Henriquez's challenges to his orders of removal**

Mr. Rodriguez-Henriquez asks the Court to reconsider his current reinstated removal order and order his immigration case reopened because his October 2013 expedited order of removal was unlawful.  Exclusive jurisdiction over claims that directly or indirectly challenge an order of removal is vested in the courts of appeals.  *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012); *see also* 8 U.S.C. § 1252(a)(5) (petition for review to the appropriate court of appeals is the "sole and exclusive means for judicial review" of a final order of removal).  A reinstated removal order "qualifies as an order of removal that can only be challenged in a petition for review filed directly with [the appropriate court of appeals]."  *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1085 (9th Cir. 2010) (upholding the constitutionality of the reinstatement regulations).  Therefore, this Court does not have jurisdiction to consider Mr. Rodriguez-Henriquez's attack on his May 2014 reinstated order of removal.

The Court, however, may review expedited removal orders to determine whether "(A) the petitioner is an alien, (B) whether the petitioner was ordered removed under [8 U.S.C. § 1225(b)(1) as an arriving alien], and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, [or is a refugee or has been granted non-terminated asylum]."  8 U.S.C. § 1252(e)(2); *see also Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1139 (9th Cir. 2008).  Nevertheless, Mr. Rodriguez-Henriquez does not contest his October 2013 expedited removal order on any of the enumerated permissible grounds in § 1252(e), and thus the Court lacks jurisdiction over his claims.

---

to name a proper respondent.  *See* Dkt. 7 at 4-5.

REPORT AND RECOMMENDATON- 4

### B. Mr. Rodriguez-Henriquez is not entitled to release

Mr. Rodriguez-Henriquez argues that he is entitled to immediate release because there is no indication of when removal proceedings will be completed and therefore there is no significant likelihood of his removal in the reasonably foreseeable future. Mr. Rodriguez-Hernandez misapprehends the law. In *Zadvydas v. Davis*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) implicitly limits an alien's post-removal order detention to a period reasonably necessary to bring about that alien's removal from the United States, and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). Under *Zadvydas*, "[a]n alien is entitled to habeas relief after a presumptively reasonable six-month period of detention under § 1231(a)(6) *only* upon demonstration that the detention is 'indefinite'—i.e., that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 701) (emphasis added). Detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the alien, or if removal is barred by the laws of this country. *Id.* In this case, Mr. Rodriguez-Henriquez has been ordered removed, and there is no evidence that El Salvador will not accept him. Indeed, the El Salvadorian Consulate has issued travel documents on several prior occasions, most recently in November 2014. Consequently, Mr. Rodriguez-Henrique fails to demonstrate that his detention is indefinite under *Zadvydas*, and thus he is not entitled to an order of release.

### C. Mr. Rodriguez-Henriquez's request for a bond hearing is moot

Mr. Rodriguez-Henriquez asserts that he is entitled to an individualized bond hearing before an IJ. This claim is moot because he received such a hearing on December, 11, 2014. Dkt. 9-1; *see Flores-Torres v. Mukasey*, 548 F.3d 708, 710 (9th Cir. 2008) (dismissing as moot

portion of habeas petition challenging detention without bond upon grant of bond hearing).

**D.     The Court does not have jurisdiction to stay Mr. Rodriguez-Henriquez's removal**

Mr. Rodriguez-Henriquez seeks a stay of removal so that he can file a motion in the immigration court to reopen his October 2013 expedited order of removal.  The Court lacks jurisdiction to grant such relief.  Title 8 U.S.C. § 1252(g) states in relevant part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter."  8 U.S.C. § 1252(g) (emphasis added).  Mr. Rodriguez-Henriquez's request that this Court stay the execution of his final order of removal while he seeks additional administrative remedies directly impacts the government's ability to "execute" his removal order and is thus precluded by § 1252(g).  *See Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) ("A request for a stay of removal 'arises from' the Attorney General's decision to execute a removal order."); *see also Ma v. Holder*, 860 F. Supp. 2d 1048, 1059-60 (N.D. Cal. 2012) (holding that § 1252(g) bars habeas jurisdiction to stay deportation during the BIA's adjudication of petitioner's motion to reopen); *Nken v. Chertoff*, 559 F. Supp. 2d 32, 36 (D.D.C. 2008) (holding that the REAL ID Act strips the district court of jurisdiction to consider a request for stay of removal); *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 122 (D.D.C. 2006) (holding that petitioner's challenge to respondents' decision to execute a removal order while his motion to reopen was pending clearly arises from the decision or action by the Attorney General to execute a removal order and is thus subject to the unambiguous jurisdiction-stripping language of § 1252(g)).  Accordingly, the temporary stay of removal should be vacated.

**CONCLUSION AND RIGHT TO OBJECT**

For the foregoing reasons, the Court recommends that respondents' motion to dismiss,

REPORT AND RECOMMENDATON- 6

Dkt. 7, be **GRANTED**; petitioner's habeas petition, Dkt. 1, be **DENIED**; and the temporary stay of removal, Dkt. 2, be **VACATED**. A proposed order accompanies this Report and Recommendation.

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **February 4, 2015.** The Clerk should note the matter for **February 6, 2015**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 21st day of January, 2015.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATON- 7